**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: <br><br> MARK J. DYEVOICH, et al., <br><br>     Debtors. | Bankruptcy No. 10-33007 (RTL) |
| COMMERCE LIMITED PARTNERSHIP #9326, <br><br>     Appellant, <br><br> v. <br><br> MARK J. DYEVOICH, et al., <br><br>     Appellees. | CIVIL ACTION NO. 11-2551 (MLC) <br><br> **MEMORANDUM OPINION** |

Appellant, Commerce Limited Partnership #9326 ("Commerce"), appeals from part of an order of the United States Bankruptcy Court for the District of New Jersey ("Bankruptcy Court") entered on February 18, 2011 ("2-18-11 Order"). (Dkt. entry no. 1, Not. of Appeal.) The 2-18-11 Order, <u>inter alia</u>, overruled Commerce's objection to and permitted abandonment of an asset of the bankruptcy estate identified as 3109 Ocean Drive, Emerald Isle, North Carolina (the "North Carolina property"). <u>See</u> Bankr. No. 10-33007, dkt. entry no. 39, 2-18-11 Order. Appellees, Mark J. Dyevoich and Barbara A. Dyevoich ("Debtors") and John Michael McDonnell, Chapter 7 Trustee ("Trustee"), have opposed the appeal. (Dkt. entry no. 9, Appellee Br.) For the reasons stated herein, this Court will affirm the part of the 2-18-11 Order that

overruled Commerce's objection to abandonment of the North Carolina property.

### BACKGROUND

Debtors filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code (the "Code") on July 28, 2010.  See Bankr. No. 10-33007, dkt. entry no. 1.  The Bankruptcy Court appointed the Trustee on July 29, 2010.  See Bankr. No. 10-33007, dkt. entry no. 3.  Commerce is an unsecured creditor of the bankruptcy estate having a claim for approximately $400,000. (Appellee Br. at 6; dkt. entry no. 10, Appellant Reply Br. at 4; dkt. entry no. 1, Record on Appeal ("Record") at 21.)

The Trustee filed an Information for Notice of Abandonment on November 2, 2010, advising creditors and other interested parties of an intention to abandon two properties, namely 70 Connolly Drive, Milltown, New Jersey, and the North Carolina property, as being of inconsequential value to the bankruptcy estate.  Bankr. No. 10-33007, dkt. entry no. 12, Not. of Abandonment.  The Notice of Abandonment stated that the North Carolina property had a current market value of $900,000, and liens on the property of $960,000, plus a 10% cost of sale.  Id. Commerce objected to the proposed abandonment of both properties, arguing that "the current market values of the two real properties that the Trustee is seeking to abandon are substantially higher than the values listed in the Notice of Proposed Abandonment," and that "[u]pon information and belief,

2

if both properties are properly marketed for sale at an appropriate price, they will yield substantial equity for the benefit of Commerce and other creditors of the estate." Bankr. No. 10-33007, dkt. entry no. 20, Commerce Obj'n.

The Bankruptcy Court held a hearing on the proposed abandonment on February 7, 2011.  (Record at 144-148, 2-7-11 Hr'g Tr.)  At that hearing, counsel for Commerce indicated that Commerce had not had an independent appraisal done of the North Carolina property, but that its appraiser reviewed the Debtors' appraisal and agreed with the figure of $1,250,000 as the value of the property.  (2-7-11 Hr'g Tr. at 2:18-21.)  Commerce also agreed that there were liens of $960,000 on the North Carolina property.  (2-7-11 Hr'g Tr. at 2:22-24.)  Debtors' counsel noted that there "were two different numbers in the appraisal" for the North Carolina property, one of which was the $1,250,000 figure referred to by Commerce, and the other being an appraisal for "about a million dollars, which was for sale within the next six months."  (2-7-11 Hr'g Tr. at 3:1-4.)  Commerce did not address Debtors' contention about the two different appraisal values at the hearing.

The Bankruptcy Court sustained Commerce's objection to the proposed abandonment of the New Jersey property.  As to the North Carolina property, however, the Bankruptcy Court ruled that it would "defer to the business judgment of the Trustee," finding

3

that Commerce did not "overcome the presumption that the Trustee is acting in good faith and with due care." (2-7-11 Hr'g Tr. at 4:6-10.) As a basis for this ruling, the Bankruptcy Court further noted:

> This property apparently is in the resort area and has been hit severely by the recession and the downturn in values of real property. And I find that the Trustee has made a reasonable decision to abandon that property as it's unlikely to result in the net equity to the estate. So I'm going to overrule the objection to the abandonment of the North Carolina property.

(2-7-11 Hr'g Tr. at 4:11-17.) Consistent with the Bankruptcy Court's statements at the hearing, the Bankruptcy Court ordered in the 2-18-11 Order "that Commerce's objection to abandonment of the . . . North Carolina Property . . . is overruled and the North Carolina Property is hereby deemed abandoned by the Chapter 7 Trustee." (2-18-11 Order at 3.)

Commerce appeals from the part of the Bankruptcy Court's 2-18-11 Order permitting abandonment of the North Carolina property, arguing that the Bankruptcy Court erred in deferring to the business judgment of the Trustee. Commerce argues that it was erroneous for the Bankruptcy Court to accept the Trustee's reliance on the lower figure of "about a million dollars" (actually an appraisal of $1,062,000 if the property were sold after a market exposure time of 90-120 days) because "there are no facts that would warrant that the NC Property would have to be sold other than upon a reasonable market exposure time and not as

4

a fire sale." (Dkt. entry no. 6, Appellant Br. at 8 n.1.) Thus, Commerce contends that the Bankruptcy Court should have recognized that the market value for the North Carolina property was the "'AS-IS' estimate of market value based on a reasonable market exposure time" of $1,250,000, not the "'AS-IS' estimate of market value based on a client-imposed restricted market exposure time of 90-120 days." (Id.; Record at 92-111, Appraisal of Real Property Located at 3109 Ocean Drive, Emerald Isle, NC ("Appraisal").)

The Appraisal appears to be the sole source of information regarding market value of the North Carolina property relied upon by the Trustee, Bankruptcy Court, and Commerce when the issue of abandonment of the North Carolina property was before the Bankruptcy Court. In addition to the $1,250,000 and $1,062,000 appraisal figures, the Appraisal also contains the following information:

> Market values have declined since 2005/06; the market is slow at this time especially for properties over $400,000; however, properties appear to be stabilizing. There is currently an over supply of homes. Marketing time is over 6 months.
>
> . . .
>
> Very limited sales have sold similar to the subject's GLA, quality, location, condition, and ocean front views. This required using comps that have sold over 1 mile [away] and over 6 months [ago]; however, all comps are located within the subject's market area.
>
> . . .

5

> There were no sales or transfers of the subject or the comparables in the 12 months prior to the effective date of the appraisal or the current sales.
>
> . . .
>
> There is currently an over supply of properties in the subject market.  Marketing times are typically over 6 months.  List-to-sale price ratio is typically around 20%.
>
> . . .
>
> The property values in the subject market have declined over the past 24-36 months, but appear to be stabilizing.  The subject market consists of mostly 2nd and retirement homes and has declined as a result of the national economy.

(Appraisal at 1-2 & Addendum.)

## DISCUSSION

### I.  Jurisdiction and Standard of Review

A district court has appellate jurisdiction over a bankruptcy court's final judgments, orders, and decrees.  28 U.S.C. § 158(a).  Orders permitting abandonment of property of the estate may be considered final orders.  See, e.g., In re Gunter, 410 B.R. 178, 181 & n.1 (Bankr. E.D.N.C. 2008); In re Murphy, 95 B.R. 116, 116-17 (Bankr. W.D. Mo. 1988).  A district court reviews a bankruptcy court's "legal determinations de novo, its factual findings for clear error, and its exercise of discretion for abuse thereof."  In re Am. Classic Voyages Co., 405 F.3d 127, 130 (3d Cir. 2005) (quotation and citation omitted); see Fed.R.Bankr.P. 8013 ("On an appeal the district court . . .

6

may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous. . . ."). Also, the Court, when addressing mixed questions of law and fact, divides the questions into their respective components and applies the appropriate standard to each. In re Brown, 951 F.2d 564, 567 (3d Cir. 1991).

**II.   Abandonment of Property Under Section 554**

Section 554 of the Code allows for abandonment of property of the estate. It provides that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). The procedure for abandonment is set forth in Federal Rule of Bankruptcy Procedure 6007, which states that "the trustee . . . shall give notice of a proposed abandonment or disposition of property to . . . all creditors. . . . A party in interest may file and serve an objection within 14 days of the mailing of the notice, or within the time fixed by the court." Fed.R.Bankr.P. 6007(a).

The decision as to which property to retain and which to abandon is in the discretion of the trustee, who may "abandon property that is 'burdensome' or 'of inconsequential value and benefit' under § 554 of the Code." In re Wilson, 94 B.R. 886, 888 (Bankr. E.D. Va. 1989). Thus, "a trustee's disposition of

7

estate property is reviewable only for the purpose of determining whether the decision was made in an arbitrary or capricious manner." Id.  When a party objects to the proposed abandonment of estate property, it is incumbent upon the Bankruptcy Court to "focus its examination upon the reasons underlying the trustee's determination and affirm a decision which reflects a business judgment 'made in good faith, upon a reasonable basis and within the scope of his authority under the Code.'" Id. at 888-89 (quoting In re Curlew Valley Assocs., 14 B.R. 506, 513-14 (Bankr. Utah 1981)).

The abuse of discretion standard is "not hard and fast," and is to be applied with the "background understanding that compromises are favored in bankruptcy." In re Mailman Steam Carpet Cleaning Corp., 212 F.3d 632, 635 (1st Cir. 2000) (citation omitted).  The trustee is required to "marshal an estate's assets and liabilities, and proceed in settling its accounts on whatever grounds he, in his informed discretion, believes will net the maximum return for the creditors," and "an inquiring court must accord him wide latitude should he conclude that the game is not worth the candle." Id.

**III. Analysis**

We find as an initial matter that the Bankruptcy Court applied the correct legal standard in deferring to the business judgment of the Trustee, presuming that the Trustee was acting in

8

good faith and with due care, and accepting as reasonable the Trustee's determination that a sale of the North Carolina property would not result in net equity to the estate.  This is what is contemplated by Section 554 of the Code.  In re Wilson, 94 B.R. at 888-89.

The Appraisal relied on by the Bankruptcy Court and the parties in considering the market value of the North Carolina property, and whether any equity in that property existed in light of the $960,000 in liens against it, provides a factual basis for the Trustee's decision to rely on the $1,062,000 "restricted market exposure time of 90-120 days" figure instead of the "reasonable market exposure time" figure of $1,250,000.  It states that (1) very few comparable properties had been sold, (2) there is an over supply of properties in the subject market, (3) marketing times typically exceed six months, and (4) the housing market consisted mostly of second and retirement homes, and had declined as a result of the downturn in the national economy.  The Bankruptcy Court referred to these considerations during the hearing.  (2-7-11 Hr'g Tr. at 4:11-17.)  Given these considerations, the Bankruptcy Court did not err in concluding that it was reasonable and within the discretion of the Trustee to determine that abandonment of the property was appropriate as the property was "unlikely to result in the net equity to the estate."  (2-7-11 Hr'g Tr. at 4:13-15.)

9

Using the $1,062,000 figure as an approximation of the realistic market value of the North Carolina property, between the 10% cost of sale and the $960,000 in liens against the property, the Bankruptcy Court correctly found that no equity would result to the estate.  The Court will therefore affirm the part of the 2-18-11 Order of the Bankruptcy Court in issue.

## CONCLUSION

For the foregoing reasons, the Court will affirm the part of the 2-18-11 Order of the Bankruptcy Court overruling the objection concerning abandonment of the North Carolina property. The Court will issue an appropriate order.

        s/ Mary L. Cooper  
**MARY L. COOPER**  
United States District Judge

Dated:    January 23, 2012